## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES,<br>*Plaintiff*,<br><br>v.<br><br>JOSE MIRANDA,<br>*Defendant*. | No. 3:16-cr-128-(VAB)-1 |

### RULING AND ORDER ON MOTION FOR COMPASSIONATE RELEASE

Jose Miranda ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mot., ECF No. 381 (Apr. 28, 2020); Mem. in Supp., ECF No. 382 (Apr. 28, 2020) ("Def.'s Mem."). The Government opposes Defendant's motion. Resp., ECF No. 384 (Apr. 30, 2020) ("Gov't Opp'n").

For the following reasons, Mr. Miranda's motion is **DENIED.**

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 2017, after he pled guilty to one count of conspiracy to possess with the intent to distribute controlled substances under 18 U.S.C. §§ 941(a)(1), 841(b)(1)(C), and 846, this Court sentenced Mr. Miranda to seventy-four months of imprisonment, three years of supervised released, a special assessment of $100.00, and a $5,000.00 fine. J., ECF No. 274 (June 15, 2017).

On April 28, 2020, Mr. Miranda moved for a compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) to reduce his sentence to time served and order seventeen months of home confinement as a condition of supervised release. Def.'s Mem. at 1. He attached letters confirming his high-risk status and a declaration by Dr. Jaimie Meyer, an Assistant Professor of Medicine at Yale School of Medicine and Assistant Clinical Professor of Nursing at Yale School

of Nursing, attesting to the high risk of epidemics in jails and prisons. *See* Exs. A–C, ECF No. 381 at 1–3 (Apr. 28, 2020).[1]

On April 30, 2020, the Government filed a memorandum in opposition to Mr. Miranda's motion for compassionate release. Gov't Opp'n.

On May 1, 2020, the Court held a telephonic conference on Mr. Miranda's motion. Minute Entry, ECF No. 385 (May 1, 2020).

## II.    STANDARD OF REVIEW

As of December 21, 2018, a court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons;" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a). The Court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" a modification, or that

---

[1] Although never explicitly stated, Mr. Miranda appears to be incarcerated at MDC Brooklyn. Def.'s Mem. at 27.

> the defendant is at least 70 years of age, has served at least 30 years
> in prison, pursuant to a sentence imposed under section 3559(c), for
> the offense or offenses for which the defendant is currently
> imprisoned, and a determination has been made by the Director of
> the Bureau of Prisons that the defendant is not a danger to the safety
> of any other person or the community.

*Id.* The Court must also find that "such a reduction is consistent with applicable policy

statements issued by the Sentencing Commission." *Id.*

## III.    DISCUSSION

The applicable policy statement for compassionate release is found in the U.S.

Sentencing Guidelines (U.S.S.G) § 1B1.13 and Commentary. U.S.S.G. § 1B1.13 states in part:

> [T]he court may reduce the term of imprisonment if . . . the court
> determines that [e]xtraordinary and compelling reasons warrant the
> reduction; . . . [t]he defendant is not a danger to the safety of any
> other person or to the community, as provided in 18 U.S.C. §
> 3142(g); and [t]he reduction is consistent with this policy statement.

*United States v. Lisi*, No. 15 CR. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020)

(quoting U.S.S.G. § 1B1.13(1)(A), (2), and (3)). While there exists a dispute among district

courts as to whether a Court must still defer to the BOP's determination of what qualifies as an

"extraordinary and compelling reason" to modify a sentence, a majority of district courts,

including in this District, have found that courts may make that determination independently.

*See*, *e.g.*, *United States v. Rivernider*, No. 3:10-cr-222 (RNC), 2020 WL 597393, at *3 (D. Conn.

Feb. 7, 2020) (collecting cases); *Lisi*, 2020 WL 881994, at *3 (collecting cases). Yet, U.S.S.G.

"§ 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current," *United*

*States v. Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020), and

"[t]he standards for considering the motion remain helpful as guidance to courts which hear these

motions without the BOP as an intermediary," *United States v. Zullo*, No. 09 Cr. 0064-02

(GWC), 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019).

The Commentary to U.S.S.G. § 1B1.13 identifies "four categories of criteria for compassionate release: 'Medical Conditions of the Defendant,' 'Age of the Defendant,' 'Family Circumstances,' and 'Other Reasons.'" *Rivernider*, 2020 WL 597393, at *2 (quoting U.S.S.G. § 1B1.13, Commentary (1)(A)–(D)). With regard to the "other reasons" category, "'extraordinary and compelling reasons exist' when, [a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the defendant's medical conditions, age, or family circumstances. *Id.* at *3 (quoting U.S.S.G. § 1B1.13, Commentary (1)(D)).

In any event, "[t]he defendant has the burden to show he is entitled to a sentence reduction," *Ebbers*, 2020 WL 91399, at *4 (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)), and "[d]istrict courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction," *see United States v. Tagliaferri*, No. 13 CR. 115 (RA), 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019) (quoting *United States v. Jefferson*, 662 F. App'x 36, 38 (2d Cir. 2016)).

Mr. Miranda moves for compassionate release because of the growing danger of the coronavirus in correctional institutions to incarcerated individuals with underlying medical conditions; he is fifty-five years old and has diabetes, and potentially asthma. Def.'s Mem. at 1. He argues that his diabetic condition makes him uniquely susceptible "to contracting the fatal disease while housed in a crowded facility with limited ability to take necessary self-protective measures such as isolating himself and regularly washing or sanitizing his hands." *Id.* He has been in custody since June 24, 2016, and the time he has served, when including good conduct time, is equivalent to a fifty-four-month sentence. *Id.* at 2. Mr. Miranda, through counsel, first requested compassionate release from the warden at MDC Brooklyn. *Id.*; Ex. A—Letter to

Warden, ECF No. 382-1 (Apr. 28, 2020). As of the filing of his motion, Mr. Miranda had not received a formal response from the Bureau of Prisons ("BOP") but had been placed on a list of high risk inmates. *Id.* In his view, his diabetes, high cholesterol, and high blood pressure constitute extraordinary and compelling reasons for sentence reduction. *Id.* at 26. In his view, "the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness." *Id.* at 28. In his opinion, an order of time served coupled with a term of home confinement as a supervised release condition serves the purposes of sentencing and "ensures that Mr. Miranda will not pose a danger to the safety of any other person or to the community. *Id.* at 28–29.

The Government responds that Mr. Miranda "has not yet exhausted his administrative remedies" and that he is an unsuitable candidate for release "in large part because he is an inveterate, violent drug trafficker, who is dangerous and poses a substantial risk to the public." Gov't Opp'n at 1. Before his arrest, Mr. Miranda threatened explicitly and repeatedly to "shoot" and "kill" a "distributor who refused to pay for the drugs" Mr. Miranda had provided. *Id.* at 1–2. During the investigation, Mr. Miranda allegedly admitted he had been involved in drug trafficking for twenty-five years. *Id.* at 2.

The Court agrees.

As an initial matter, the Court notes that normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility. Mr. Miranda argues that the exhaustion requirement does not limit the Court's ability to review or grant his motion. Def.'s

Mem. at 30–36. The Government acknowledges that courts in this district have held that the

exhaustion requirement is not absolute, Gov't Opp'n at 17 (citing *U.S. v. Colvin*, No. 19-cr-179

(JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 8, 2020)), but maintains that the exhaustion

requirement should not be waived, *id.* at 15–16.

"Even where exhaustion is seemingly mandated by statute . . . , the requirement is not

absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). "[T]he requirement of

completing the administrative process may be waived 'if one of the recognized exceptions to

exhaustion applies.'" *United States v. McCarthy*, No. 3:17-cr-0230 (JCH), 2020 WL 1698732, *3

(D. Conn. Apr. 8, 2020) (quoting *United States v. Perez*, No. 17 CR. 513-3 (AT), 2020 WL

1546422, at *2 (S.D.N.Y. Apr. 1, 2020))). These exceptions include: (1) where exhaustion would

be futile, including where undue delay due to exhaustion may result in "catastrophic health

consequences;" (2) where "the administrative process would be incapable of granting adequate

relief;" and (3) where "pursuing agency review would subject plaintiffs to undue prejudice."

*Washington*, 925 F.3d at 118–20.

Thus, whether the exhaustion requirement may be waived in a given case is closely

related to analysis of the substantive underlying reasons for a defendant's motion for

compassionate release. The Court therefore now turns to that substantive analysis.

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have

held that a defendant's pre-existing health conditions—respiratory conditions in particular—in

combination with the increased risks of COVID-19 in prisons constitute "extraordinary and

compelling reasons" warranting relief. *See, e.g.*, Order on Def.'s Mot. for Compassionate

Release at 2–3, *United States v. Norris*, No. 17-cr-106 (SRU) (ECF No. 119), 3:18-cr-243 (SRU)

(ECF No. 37) (D. Conn. Apr. 16, 2020) ("[Mr.] Norris suffers from asthma and uses an Albuterol

inhaler to treat his symptoms. Health officials have recognized that individuals with chronic respiratory disease are deemed at greater risk of COVID-19. Due to his incarceration, [Mr.] Norris is unable to properly safeguard against infection. Therefore, for the reasons set forth in his motion, I conclude that his medical condition and current conditions of confinement constitute extraordinary and compelling reasons to reduce his sentence[.]" (internal citations omitted)). Courts have also found diabetes to be a sufficiently serious underlying condition warranting compassionate release. *See U.S. v. Livingston*, 18-CR-416 (ENV), 2020 WL 1905202, at *3 (E.D.N.Y. Apr. 17, 2020) ("Indeed, while diabetes is on the CDC's list of high-risk medical conditions, pre-diabetes is not."); *U.S. v. Hansen*, 2020 WL 1703672, at *8 (Apr. 8, 2020) (Type 2 diabetes, in combination with heart disease, glaucoma, tuberculosis, prostate cancer and COVID-19 pandemic, warranted compassionate release); *Colvin*, 2020 WL 1613943 at *4 (defendant's diabetes constituted a serious medical condition "which substantially increases her risk of severe illness if she contracts COVID-19"); *U.S. v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020) (sentencing a defendant who had served seventeen years of a twenty-one year sentence to time served, in part because he had Type 2 diabetes).

Mr. Miranda's diabetes places him in a high-risk category should he contract COVID-19.[2] His underlying health conditions, however, are not the only factors that Courts consider when assessing whether a defendant is a candidate for compassionate release. The Sentencing Guidelines "provide that compassionate release is appropriate only where the defendant is not a

---

[2] As of May 5, 2020, MDC Brooklyn had no confirmed cases of COVID-19 among inmates but had twenty-nine confirmed cases among staff. *COVID-19, Coronavirus*, BUREAU OF PRISONS (May 5, 2020), https://www.bop.gov/coronavirus/. Fed. R. Evid. 902(5) ("The following items of evidence are self-authenticating; . . . (5) Official Publications. A book, pamphlet, or other publication purporting to be issued by a public authority."); *United States v. Capozzi*, No. 3:16-cr-347, 2020 WL 1849777, at *2 (M.D. Pa. Apr. 13, 2020) ("We further take judicial notice of recent policies and procedures adopted by LCP to prevent or limit the spread of COVID-19 within the prison.").

danger to the safety of any other person or to the community." *United States v. Wong Chi Fai*, No. 93-CR-1340 (RJD), 2019 WL 3428504, at *3 (E.D.N.Y. July 30, 2019) (internal citations omitted); *see also Gotti*, 2020 WL 497987, at *6 (denying compassionate release to a Gambino Family mob boss, noting that "[a] court is not required to reduce a sentence on compassionate release grounds, even if a prisoner qualifies for such reduction because of his medical condition"). Specifically, 18 U.S.C. § 3142(g) requires courts to consider (i) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . firearm, explosive, or destructive device," (ii) "the weight of the evidence against the person," (iii) "the history and characteristics of the person," and (iv) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Wong Chi Fai*, 2019 WL 3428504 at *3 (internal citations omitted); *see also Ebbers*, 2020 WL 91399, at *6 ("Relevant factors include the nature of the offense, the history and characteristics of the defendant, and the nature of the danger." (citing U.S.S.G. § 1B1.13(2) (incorporating 18 U.S.C. § 3142(g) factors))).

Courts have found during the coronavirus pandemic that, even where an individual has medical conditions which make him vulnerable to COVID-19, his danger to the community may ultimately outweigh his health concerns and the balance of factors weighs against release. *See, e.g.*, *U. S. v. Morales*, No. 3:19-cr-00121 (KAD), 2020 WL 2097630, at *3 (D. Conn. May 1, 2020) (denying compassionate release to a 30-year old with asthma whose underlying offense involved armed assault of the mother of his children, who has a significant criminal history, and who "has faced incrementally greater periods of incarceration over the years with little or no deterrent effect"); *United States v. Gamble*, No. 3:18-cr-0022-4 (VLB), 2020 WL 1955338, at *5 (D. Conn. Apr. 23, 2020) (denying a motion to modify defendant's sentence under 18 U.S.C. §

3582(c)(1)(A) where he had served only 26 months of a 92-month sentence, had a significant criminal history (Category VI), and "was cavalier and unapologetic about his illegal possession of deadly weapons."); *U. S. v. Butler*, No. 19 CR. 834-10 (PAE), 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release to an individual with asthma and a heart condition because his "criminal records reflect[] a pattern of violent and dangerous conduct," with "two convictions, two years apart, for criminal possession of a loaded firearm, and a conviction for robbery in the first degree and criminal possession of a loaded firearm," and his underlying conviction involving gang activity and the discharge of firearms).

Mr. Miranda's underlying conviction for conspiracy to distribute and to possess with intent to distribute a controlled substance stems from an investigation of Mr. Miranda's heroin and cocaine distribution to Connecticut and Rhode Island. Gov't Opp'n at 1. After wiretaps indicated he would shoot or kill a Rhode Island customer "who refused to pay for the drugs" Mr. Miranda had provided, officials decided to arrest him "before he could carry out the threatened violence[.]" *Id.* at 1–2. The Government argues that the "DEA wiretap investigation," among other evidence, "establish[es] beyond debate that, prior to arrest, [Mr.] Miranda was a lifelong drug dealer with exceedingly violent propensities." *Id.* at 24. In their view, Mr. "Miranda is in jail now because he is a danger to the community, and he has been a danger to the community for 25 years." *Id.*

While Mr. Miranda has no juvenile adjudications or adult criminal convictions, the U.S. Probation Office calculated his criminal history category as Category I with a total offense level of 27. Pre-Sentence Report, ECF No. 253 ¶¶ 39–50 (May 19, 2017). The Probation Office further stated:

> Towards the end of the wire interceptions, Mr. Miranda was
> overheard making credible threats towards another individual who

9

was unhappy with the heroin that had been provided. The interceptions were concerning enough for the investigation to be terminated.

[T]he Court will need to balance the large quantity of heroin involved in the offense with Mr. Miranda's otherwise law abiding behavior.

*Id.* ¶¶ 103–04.

In light of Mr. Miranda's history of threatened violence and the quantity of drugs involved, Mr. Miranda has not demonstrated that he would not be a danger to his community, if the Court were to grant his motion for compassionate release.

Accordingly, having considered all of the factors required by U.S.S.G. § 1B1.13 as well as those set forth in 18 U.S.C. § 3553(a), Mr. Miranda's motion for compassionate release will be denied. *See Butler*, 2020 WL 1689778, at *3 ("While the prospect of contracting COVID-19 undeniably presents a serious risk to [Mr.] Butler's health, his release some 45 months early at least equally exposes the community to a serious risk that he would resume violence.").

## IV.   CONCLUSION

For the reasons explained above, the Court **DENIES** the motion for compassionate release.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of May, 2020.

  /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge